UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LUKENS MARTELUS,

        Plaintiff,

v.                                Case No. 3:22-cv-874-BJD-JBT

E. PEREZ-LUGO, et al.,

        Defendants.
_____

**ORDER**

**I. Status**

Plaintiff, Lukens Martelus, an inmate of the Florida penal system, initiated this action *pro se* by filing a complaint for the violation of civil rights, which was docketed on August 11, 2022 (Doc. 1). Plaintiff paid the full filing fee. *See* docket. In accordance with its obligation under the Prison Litigation Reform Act (PLRA), the Court reviewed the sufficiency of the complaint. *See* 28 U.S.C. § 1915A(a), (b) (providing that a court must review a complaint by a prisoner against a governmental officer or employee and dismiss the complaint, or any portion of it, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted"). The Court found Plaintiff failed to state a plausible claim for relief against two of the three named Defendants—Ricky Dixon, the Secretary of the Florida Department of Corrections (FDOC)

and Christina Crews, the Assistant Warden of Columbia Correctional Institution (CCI)—and, therefore, dismissed the claims against those Defendants, but directed Plaintiff to serve the remaining Defendant, Dr. Perez-Lugo. *See* Orders (Docs. 4, 5).

At Plaintiff's request, the Court granted him leave to amend his complaint. *See* Order (Doc. 12). Plaintiff filed an amended complaint (Doc. 15; Am. Compl.) with supporting documents (Doc. 15-1; Pl. Ex.) (medical and grievance records). Through a motion (Doc. 19), Plaintiff asks the Court to direct the U.S. Marshals Service to serve the named Defendants and to place a lien on his prison account for the cost. Before addressing the motion, the Court must assess the sufficiency of Plaintiff's amended complaint in accordance with its obligation under the PLRA.

## II. Standard of Review

Since the PLRA's "failure-to-state-a-claim" language mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts apply the same standard in both contexts. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). *See also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)). In reviewing a complaint, a court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Iqbal*, 556 U.S. at 678.

### III. Complaint Allegations

In his amended complaint, Plaintiff names six Defendants, including the two previously dismissed: Dr. E. Perez-Lugo; Centurion Medical Group; an unnamed doctor identified solely as the "Executive Medical Director";[1] Secretary Dixon; Assistant Warden Crews; and S. Geiger, a health services administrator at CCI. *See* Am. Compl. at 2-4. Plaintiff's allegations are sparse. He alleges that, on or around April 21, 2022, he was denied "specialized

---

[1] It appears Plaintiff is referencing a person employed by the FDOC, not Centurion. *See* Am. Compl. at 3.

medical treatment to see [a] back surgeon." *Id.* at 6. According to Plaintiff, he had back surgery, and the back surgeon wanted to see him for follow-up treatment, but the Defendants, "while acting in concert with one another[,] refused to follow [the] specialist recommendation's [sic]." *Id.* He contends he has suffered ongoing back degeneration because "a medical official without specialized training" was making decisions about his continuing treatment. *Id.* As relief, he seeks compensatory damages and to be evaluated by a back specialist or sent back to the surgeon, Dr. Scibelli, at Jackson Memorial Hospital. *Id.*

In support of his allegations, Plaintiff incorporates by reference the attached medical and grievance records. *See id.* In his grievance records, Plaintiff indicates he had been treating with doctors for about ten years, but his back surgery had caused "major damage," which he attributed to the incompetence of medical staff. *See* Pl. Ex. at 7-8, 13. On April 21, 2022, Plaintiff treated with Dr. Scibelli, a neurosurgeon, who noted Plaintiff "has had multiple surgeries on his spine." *Id.* at 3. Dr. Scibelli recommended Plaintiff have a follow-up MRI and CT scan. *Id.*

Plaintiff filed a formal grievance on April 26, 2022, complaining about his appointment with Dr. Scibelli. *Id.* at 5. While unclear, it appears Dr. Scibelli had been telling Plaintiff the MRI and CT scan could not be completed

until Dr. Scibelli received authorization from the prison, but it turned out, the authorization "was [t]here all the time," and Dr. Scibelli was giving Plaintiff "the run[-]around." *Id.* Plaintiff accused Dr. Scibelli of "preventing [him] from receiving the treatment he deserve[d]." *Id.* Defendants Dr. Perez-Lugo and Assistant Warden Crews responded to Plaintiff's grievance informing him he would "have a follow up with the provider to discuss [a] treatment plan" once his medical records from his recent appointment had been sent to the prison. *Id.* at 6. They informed Plaintiff "[i]t [was] the responsibility of the specialist to determine the appropriate treatment regimen for [his] condition" and that any questions about his treatment plan should be addressed through sick call. *Id.*

Plaintiff appealed the grievance response from Dr. Perez-Lugo and Assistant Warden Crews, saying that an "orthopedic specialist [should] determine an 'appropriate treatment plan' for [him]." *Id.* at 16. Plaintiff requested that he be scheduled with a physician at the Reception and Medical Center. *Id.* In denying his appeal, the grievance responder noted he had been seen by a physician on June 22, 2022. *Id.* at 17.

The physician Plaintiff treated with on June 22, 2022, was Defendant Dr. Perez-Lugo. *Id.* at 1. Dr. Perez-Lugo noted Plaintiff had been in "constant pain," which he (the doctor) had discussed with another doctor. *Id.* An MRI and

5

CT scan had been ordered and were to be sent to Dr. Scibelli for Plaintiff's follow-up. *Id.* Plaintiff had the MRI in July 2022. *See id.* at 20. It appears there was a lengthy delay in sending the results of the MRI and CT scan to Dr. Scibelli. *See id.* On October 10, 2022, Plaintiff complained that he had had two appointments with a specialist (presumably Dr. Scibelli), but he was unable to receive treatment because the results of his MRI and CT scan had not yet been sent to the doctor. *Id.* The responding official noted that "several attempts [had] been made to request a disc [of the scans] . . . . but it [had] not [yet] been received." *Id.* Plaintiff's appointment with the specialist had been rescheduled. *Id.*

On October 12, 2022, Plaintiff complained again about the delay in sending his medical records to the specialist. *Id.* at 19. The responding official noted the MRI disc had been requested and a new appointment had been scheduled. *Id.* On October 25, 2022, Plaintiff appealed the grievance response, complaining that his back pain "continue[d] to get worse" but prison officials had been deliberately indifferent to his serious medical needs. *Id.* at 23. He asserted the medical staff was not competent "to examine or to refer [him] to others who can [help]." *Id.* In noting Plaintiff had been seen by a medical provider on November 3, 2022, the responding official denied his appeal on November 18, 2022. *Id.* at 22.

On November 30, 2022, Plaintiff filed an informal grievance to medical noting that he told Defendant S. Geiger the prior day he had been experiencing "excruciating pain" and asked to see a specialist. *Id.* Apparently, the specialist still had not received the disc of Plaintiff's scans. *Id.* S. Geiger responded, noting a consult request was submitted on November 3, 2022, and the consult had been approved and was awaiting scheduling. *Id.* at 24.

## IV. Applicable Law

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "a person" acting under the color of state law deprived him of a right secured under the United States Constitution or federal law. *See* 42 U.S.C. § 1983. A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983 as an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, a prisoner bringing such a claim "has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). In the prison context, a medical provider is deemed to have been deliberately indifferent, for example, when he or she knows an inmate needs medical care but intentionally refuses to provide that care, *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985), or delays necessary medical care for non-medical reasons, *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Negligence is not actionable as deliberate indifference. *Estelle*, 429 U.S. at 105-06 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). In other words, "[when] a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1st Cir. 1981)) (second alteration in original). *See also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."). As such, to state a deliberate indifference claim under the Eighth Amendment, a prisoner-plaintiff must do more than allege the care he received was "subpar or different from what [he] want[ed]." *Keohane*, 952 F.3d at 1277. He must allege the treatment he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Adams*, 61 F.3d at 1544.

Even if a prisoner-plaintiff were to plausibly allege a medical provider had been deliberately indifferent to his serious medical needs, he may not necessarily proceed against the medical provider's supervisor or employer. This is because liability under § 1983 may not be based on a theory of vicarious liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). In other words, § 1983 liability must be based on something more than "the mere fact that [a supervisor or municipality] employed [an] offending official." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). A supervisor also cannot be held liable under § 1983 simply for having responded to a prisoner's grievance. *Jones v. Eckloff*, No. 2:12-cv-375-Ftm-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009))).

A claim against a supervisor may proceed only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A causal connection can be established when a supervisor knows a

subordinate will act unlawfully or adopts a policy that results in deliberate indifference to an inmate's constitutional rights. *Id. See also Cottone*, 326 F.3d at 1360. Similarly, to proceed against a municipality, including a private company under contract with a municipality,[2] a plaintiff must allege the existence of a "custom or policy that constituted deliberate indifference to [a] constitutional right" and caused a constitutional violation. *Moody v. City of Delray Beach*, 609 F. App'x 966, 967 (11th Cir. 2015) (citing *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004)). *See also Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that § 1983 applies to municipalities but liability arises only when a "municipal policy of some nature cause[s] a constitutional tort").

## V. Analysis

Plaintiff's amended complaint is subject to dismissal under the PLRA because he fails to state a plausible claim for relief under § 1983. *See Iqbal*, 556 U.S. at 678. Plaintiff does not explain why he names the Defendants he does; he merely alleges that all Defendants "act[ed] in concert with one another

---

[2] "[W]hen a private entity . . . contracts with a [municipality] to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under [§] 1983." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)) (second alteration in original).

[by] refus[ing] to follow specialist recommendation's [sic]." *See* Am. Compl. at 6. He does not say what recommendation(s) by the specialist the named Defendants refused to follow. *See id.* It appears Plaintiff names the individual Defendants he does solely because they responded to grievances or were supervisors of employees who made a mistake or did not do what Plaintiff wanted or expected. Even assuming mistakes or negligence constitute deliberate indifference, liability under § 1983 may not be based on a theory of respondeat superior. *See Cottone*, 326 F.3d at 1360. And, as to Centurion, not only does Plaintiff fail to allege an underlying constitutional violation by one of the individual Defendants, but he does not allege an official policy or unofficial custom was the "moving force" behind a constitutional violation. *See Monell*, 436 U.S. at 691.

Moreover, Plaintiff's allegations and supporting documents demonstrate he received medical care, including the care recommended by the specialist, Dr. Scibelli. Based on his complaint allegations and supporting documentation, it appears Plaintiff initiated this action based on his frustration with Dr. Scibelli. For instance, Plaintiff claims the incident or conduct giving rise to his claims occurred on April 21, 2022, *see* Am. Compl. at 4-5, which is the day he

treated with Dr. Scibelli, *see* Pl. Ex. at 3.[3] In a grievance he filed shortly after that appointment, Plaintiff complained that Dr. Scibelli was giving him the "run[-]around." *Id.* at 5. Not only is Dr. Scibelli not a named Defendant, but to the extent Dr. Scibelli was responsible for the delay in scheduling a follow-up MRI and CT scan, it appears the delay was based on a miscommunication, misinformation, or mere mistake, which is not actionable as deliberate indifference. *See Estelle*, 429 U.S. at 105-06. Regardless, however, neither Centurion nor prison administrators or other prison staff can be held liable under § 1983 for another person's negligence or conduct. *See Monell*, 436 U.S. at 691; *Cottone*, 326 F.3d at 1360.

Finally, to the extent Plaintiff contends medical providers at the prison, including Defendant Dr. Perez-Lugo, were deliberately indifferent to his serious medical needs, his own records belie such a conclusory assertion. Indeed, Plaintiff's grievance records show he had been receiving medical care for a decade, including referral to and surgery by a neurosurgeon and post-surgery care. *See* Pl. Ex. at 1, 3, 13, 20-22. It appears Plaintiff's primary complaint against those at the prison, as demonstrated through his grievance records, is that the MRI and CT results were not promptly sent to Dr. Scibelli,

---

[3] Most of the supporting records Plaintiff provides with his amended complaint are dated after April 21, 2022, and, indeed, are dated after he initiated this action. *See generally* Pl. Ex.

12

which delayed Dr. Scibelli in formulating a treatment plan for Plaintiff. Even accepting these allegations as true, Plaintiff does not fault any of the named Defendants for the delay, nor does he allege facts that would permit the reasonable inference the delay was the result of anything other than mistake or internal administrative bureaucracy.

To the extent Plaintiff suggests he was unhappy with administrative protocols that are inherent in the prison medical context or with the treatment decisions made by his doctors, such allegations do not satisfy the stringent standard of liability under § 1983. *See Harris*, 941 F.2d at 1505 ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim [for deliberate indifference]."). Plaintiff merely alleges the care he received was "subpar or different from what [he] want[ed]." *See Keohane*, 952 F.3d at 1277. He alleges no facts that would permit the reasonable inference the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Adams*, 61 F.3d at 1544.

## VI. Conclusion

Accordingly, it is

**ORDERED:**

1. This case is **DISMISSED without prejudice** under the PLRA, 28 U.S.C. § 1915A.

2. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of March 2023.

                                  BRIAN J. DAVIS
                             United States District Judge

Jax-6
c:
Lukens Martelus